May it please the Court, Your Honor, Steve Fink for BNSF Railway. Judge Haddon indisputably denied Mr. Bilbruck's timely motion to remand and indisputably granted his untimely amended motion to remand. That means, for present purposes, that this Court can, notwithstanding the prohibition in 1447d, review the remand order. Mr. Bilbruck's counsel understandably tries technicality, but this is an area that where technicality reigns supreme, all in the interests of attempting to ensure, or at least encourage, the prompt, correct, and final decision about which court and which court system. Do you want us to hear all appeals from administrative hearings of all state agencies in the United States? No, Your Honor. That's not the rule we're asking. Then we should or shouldn't, and which one shouldn't? All we're asking this Court to rule is that there is no subject matter jurisdictional bar. Therefore, we have to hear the case of the Federal courts. No, you don't have to hear the case, Your Honor. There are a whole series of abstention doctrines, other doctrines, prudential doctrines that allow a district court or this Court even to decline to entertain certain types of decisions. The case you have before you is one that in virtually every State of the Union except Montana, it begins in a State court, can be begun in Federal court under diversity jurisdiction as decided by Federal district judges, reviewed by Federal appellate judges all of the time. There are obviously other kinds of cases that arise in State administrative agencies that are not as suitable for review in a Federal district court. But if the Supreme Court, the U.S. Supreme Court, has made clear, we believe, in the City of Chicago and Verizon and subsequent decisions, that the rule announced sua sponte in Shamrock and sua sponte by the Seventh Circuit in the City of Chicago case is not, in fact, a question of subject matter jurisdiction. Courts do have subject matter jurisdiction under Section 1331 to review State agency decisions, which is not to say that they are going to be doing so in every or maybe even the majority of cases. So, as I say, the only rule we're arguing for here is that City of Shamrock was wrongly decided, or Shamrock Motors was wrongly decided based on City of Chicago and that, therefore, the remand order was neither based on subject matter jurisdiction nor, if this Court has to review the correctness of Shamrock under Lively against Wild Oats, that this is a matter of subject matter jurisdiction. Can I get back to the question about the timeliness or untimeliness of the remand motion? We have the Second Circuit case, Phoenix Global Ventures, suggesting that when there has been a motion that was filed timely but then for procedural reasons was kicked and didn't make it, the district court, the Second Circuit filed a remand order. Why shouldn't the Ninth Circuit follow that sort of rule? It is a hyper-technical ruling to say that because the district court denied it rather than just allowed it to go forward with revisions. Well, three reasons really, Your Honor. Of course, one is that we think the rule that we're arguing for follows logically if not inevitably from this Court's and other Courts' decisions about how a motion to remand must be considered. Second, I mean, there simply is no provision in the Federal rules, unlike, for example, with respect to pleadings. The Federal rule permit pleadings to be amended, specifically provide for relation back. There aren't many motions in the practice that are jurisdictional in the sense this one is, that it determines reviewability. But there's no provision for a amended motion that will relate back to the filing of the original motion. In this area, the courts have simply insisted that, again, it's in the overall interest of ensuring prompt and correct disposition that square corners be cut. And if you allow an amended motion, you know, in this setting, of course, it seems hyper-technical. But if the judge had denied the motion originally on the grounds that he didn't think that the shamrock controlled this case, and a month, a year later, the plaintiff moved for reconsideration and intervening cases convinced the judge he was wrong, I mean, he could then go back and reconsider his original decision and the whole point of trying to get remand issues decided immediately would be defeated. And, you know, that's the one extreme, obviously, because it was a local rule violation and the time period wasn't great. But once you open the door, where are you going to draw the line and say what quarters can be reconsidered or renewed or amended or supplemented and which ones cannot? So the courts have insisted, and, you know, we cited in another Second Circuit case, the Mitskowski case, that where the courts are simply requiring that everything be done just according to Hoyle. And just like in Mitskowski, where remand itself was granted by the district judge on a violation of a local rule and that would have been unreviewable and is unreviewable in most circumstances, this is really just the counterpart of that. I mean, you have to do it right in order, again, just defining reviewability. Because, again, if we're wrong about the merits of our remand order, of course, that doesn't mean the remand isn't still going to be ordered. All this does is open the door to allow this court to review the correctness of the decision made by Judge Haddon on the remand issue. And, of course, you lost four times in the state court proceedings. Now you're coming to the federal courts. Don't you think that that's a little bit  I'm not sure I understand, Your Honor. Well, didn't you lose four times in the state courts? Administrative proceedings in the state court? No, Your Honor. There was a How many times do you think you lost? Well, we lost once in the administrative proceeding before the Montana Commission. We filed a petition in state court. It was never adjudicated in state court because we removed it here. Mr. Bilbrook moved a remand and we lost the remand motion. Three times then. I suppose I really counted as twice, but we were simply employing the procedural devices that we needed to employ. We had to file the petition first in state court for review because that's what the Montana statute requires. And then we removed the case because we believe that diversity jurisdiction existed. This case could have been brought originally in the federal court, but we couldn't take that chance because the statute says how you obtain review of a Montana agency adjudication, which in all respects, I remind you again, is just as if the case had been tried in a court, whether a federal court or a state court. And I said in most jurisdictions in the country, that's the way these claims are adjudicated. But what Montana has done, and of course, if the court applies the rules Judge Haddon has, what Montana has done is essentially deprived out-of-state defendants, such as the railroad, from ever being able to use the diversity jurisdiction that the Constitution and the statutes of the United States supply so that out-of-state defendants won't have the disadvantage of being hometown in state courts. There will be no way for BNSF to get a case Are you stating that as a legal proposition that it's unfair for state courts to hear cases involving citizens of other states? No. Did you just say that? No. No. I said that the Constitution of the United States and the judiciary acts of the United States give out-of-state defendants the right to remove a case to federal court to avoid the risk, right or wrong. Why didn't you do that initially? Pardon me? Why didn't you do that initially? Well, as I said, we didn't bring the case originally in federal court because the Montana statute requires that a petition for review be filed in state court, and we were concerned that Before you appeal to the state court, why didn't you have it removed before then? This court has held in the Oregon Bureau case that an action cannot be removed from an agency, that an agency is not a court, and therefore removal does not lie from the agency proceeding. It has to be in court before it can be removed. So we removed it as soon as we could under this Court's cases. Your Honor? Would Judge Haddon believe that he lacks subject matter jurisdiction over this matter? Do you agree with that? No. I mean, if anything could be said about Judge Haddon, he is a stickler for procedural precision, and he knows the word subject matter jurisdiction and what it means in 1447d, and he read your cases which make the distinction between subject matter and other types of jurisdiction, and his order nowhere mentions subject matter jurisdiction with respect to his reason. I mean, he bases the decision on 1441, but then he does reference Shamrock Motors, which at least raises the strong implication that he had subject matter jurisdiction in mind. How would we ignore the fact that he did reference Shamrock? Well, he cites Shamrock at page 200, the same page we cite, where Shamrock says that it's both a matter of not they don't use the term subject matter. They say original jurisdiction and removal jurisdiction. This Court lacks both. Of course, we made all these same arguments, the City of Chicago and the rest, to Judge Haddon as well. And I mean, it's our assumption and belief that Judge Haddon may have had some concerns about whether this was, in fact, a question of subject matter jurisdiction. But Shamrock still said as a matter of removal jurisdiction, it was not a civil action. So he cited that page of Shamrock, cited only the removal statute, and said whether or not it's a matter of subject matter jurisdiction, you can't remove it anyway. And we believe that's the basis of his holding. Thank you. You're Terry Trewiller, are you? Pardon me, Your Honor. Are you Terry Trewiller? I'm sorry, Your Honor. What is your name? Oh, I'm sorry. My name is Stephen Fink. I'm representing BNSF Railway. That's Terry Trewiller. This is Mr. Trewiller right here, yes. Former Justice of the Montana Supreme Court. Yes, I recognize that. Are you with him? No. No, I just met Mr. Trewiller for the first time this morning, Your Honor. All right. Okay. Well, my time is up, so I yield it to you, unless the Court has other questions. Good morning, Justices. My name is Terry Trewiller. I represent I have to tell you, the first time I went before the Montana Supreme Court, I think you were on the bench. I hope it turned out well, Justice. It was a lovely experience. Thank you. Welcome. Thank you. It's nice to be here. I represent Charles Bilbrook, who is the respondent or appellee in this case. Before I get into the substance of my argument, I'd like to respond to a couple of the questions that you directed to the appellant. First of all, it's true that the appellant lost three times in the Montana system. They lost as a result of the Human Rights Commission's investigation. They lost as a result of the Department of Labor's hearing, adversarial hearing. And they lost as a result of the Human Rights Commission's review of the record. They then lost for a period when District Judge Haddon remanded this case to the District Court. So your numbers are correct. But that was the first three. They were all part of essentially the same agency administrative process. There were three parts of the agency process, yeah, but they were three separate determinations. Finally, you asked, I think, a question, Justice Aikuda, about whether Justice Haddon had based his decision on jurisdiction. Let me just interrupt for a moment. Judge Kuczynski always says there's no justice on the Ninth Circuit, so we're all judges here. Oh, you're all judges? Okay. Yeah, but Kuczynski plagiarized that remark from Walter Ely. See? Did you know Walter Ely? No, Judge. A good guy, yeah. Yeah, he was like a movie star up here, something like you, you know. And he always would wait for a lawyer to refer to him as justice. And then he would point out that there was no justice on the Ninth Circuit. It's a hallowed expression. Well, let's hope that's not true. Yes. Anyway, Judge Aikuda, you asked counsel for the appellant  and he contended that jurisdiction was not discussed, and Judge Haddon's opinion, that's not correct. Judge Haddon clearly found that this was not a civil action pursuant to this Court's decision in Shamrock. This Court decided in Shamrock that whether there was jurisdiction, original jurisdiction in the district court, depended on whether, in fact, the case was a civil action. But he does say 1441, and that also says as a matter of removal jurisdiction, you can't remove. He cites Section 1441, which does relate to removal decision, but the decision of this Court in Shamrock was also based on Section 1441 and its interpretation of the requirement that it be a civil action. Section 1332, which is clearly jurisdictional, also requires that it be a civil action. The same terms should be construed in the same manner, and I think were inferentially at least construed in the same manner in this Court's decision in Shamrock. Otherwise, the Court couldn't have arrived at its decision. Well, even if it was a question of subject matter jurisdiction, couldn't this Court reach it under the Lively decision? No. The Lively decision simply what they're asking you to do in this case is reverse a prior decision related to jurisdiction. That's the Shamrock case. There's no question that the Shamrock case relates to jurisdiction. The issue is stated in terms of jurisdiction. The conclusion is stated in terms of jurisdiction. The whole discussion is stated in terms of jurisdiction. It discusses jurisdiction in terms of whether it's a civil action. It discusses a civil action in terms of whether it's an appeal based on the record or appeal based on de novo. The Lively decision says that this Court can review whether the district court's remand was in fact based on a jurisdictional issue. It, however, goes on to say that this Court can't review the merits of a jurisdictional decision. What they're asking the Court to do here is review the merits of the jurisdictional decision based on a decision by the U.S. Supreme Court in the city of Chicago, which I don't think changes Shamrock in any way. But at best, their argument is that because of that decision, this Court should reconsider its jurisdictional decision in Shamrock, which flies in the face of Section 1447, which precludes this Court from reviewing remands based on jurisdiction. Well, the theory would be that the district court erroneously thought that there was no subject matter jurisdiction because of this, because it was an appeal from an agency action or because it was a case based on an agency action. That's their argument. But that argument basically is that the Court arrived at the incorrect jurisdictional conclusion. To address that argument, this Court has to reconsider a jurisdictional issue. Section 1447d and c are very clear that this Court cannot review jurisdictional issues. And that's clearly the basis on which Judge Haddon remanded the case to district court. And I'll give you an example of why that's important. I was going to talk a little bit about the factual background. Charles Brillbrook alleged discrimination in this case back in May of 2003. His decision was decided after an adversarial hearing in which most facts were undisputed in 2004. This case was appealed first to the state district court and then remanded by the people who appealed, or petitioned for removal by the people who appealed to federal district court in early 2005. We're now in 2007, and we're still arguing over a procedural motion without any consideration for the merits of the case. We're four years past the actual discrimination. We're three years past the Department of Labor's decision that there was discrimination. And we're no further along than he was before he filed his petition. I think 1447 is intended to prevent that kind of delayed justice. And that's what's going to happen if this Court doesn't adhere to the rule. I think the whole appeal here is based on a false premise, in addition. The appeal is based on the fact that there was not a timely motion to remand this case to the district court. That's simply not true. There was a timely motion to remand this case to the district court. The railroad petitioned for removal on January 25th of 2005. We made our motion to remand to the district court based on the jurisdictional issue that I've talked about on February 18th of 2005, which was less than 30 days later. It's that exact same motion on which the district court based its decision to remand. The only exception, or the only difference or distinction in this case, is that in the intervening period of time, we were required to amend our motion to state a superfluous sentence, which is that we had conferred with the opposing party and they objected to our motion. Well, the district court did deny your motion, correct? I mean, that original one was denied. So it was a new motion that was filed two days after the 30-day period. With all due respect, Judge Ikuda, I think to construe the district court's order as a denial of our motion would place the district court in an abuse of discretion situation for the following reason. The rule based on which the court acted is a purely procedural rule that relates to form. Federal Civil Rule Procedure 83 prohibits district courts in the federal court system from enacting local rules which would deny an important right to a party based on a rule of form. Judge Haddon conceded in his first order that the only thing wrong with the respondent's motion to remand was a matter of form. It hadn't stated one simple sentence. The railroad's response is, well, things have to be done right. But you have to recall the railroad filed the petition for removal. The railroad violated the same rule. Rule 7.1 subparagraph J, which requires conference with the opposing party and statement whether the opposing party objects or doesn't, applies to petitions as well as to motions. The railroad didn't follow the rule when it filed its petition, and it didn't follow the rule in any of the subsequent four motions that it filed before the district court. It was a technical rule related to form, and the district court couldn't dismiss our motion based on a technical rule related to form. Now, the railroad says that, in fact, you did not confer with them, so it wasn't just a technical you left the sentence out, but in fact you hadn't done the substance of the conferring. That's correct, and we did not confer with them because we thought it was a given that they would object to our motion to remand. If the railroad didn't object to our motion to remand, they could have conceded its merits, and we would have remanded the case without any controversy. So it is superfluous to that extent, just like it would have been superfluous for the railroad to put into its petition that it had conferred with us and that we object, but I think even less so in that circumstance than in our circumstance, because we were asking the court to overrule something that the railroad had already done. So it's purely a rule of form. The district court couldn't dismiss or deny our motion based on a rule of form, or it would have been reversed based on an abuse of discretion, and I think to hold that it actually denied our motion, instead of allowing us to amend our motion and then granting it exalts form over substance and defeats the whole purpose of Section 1447. And I don't think that's good policy, and this Court has said in the past that it's not good policy to exalt form over substance. Well, Judge Haddon, somewhere along the line, found that the railroad was, quote, a plaintiff, unquote. Yes, Judge Haddon did do that, and that was a second basis for our motion that was filed. All right. I'm out of time. Go ahead. The only thing I wanted to add is that the motion that Judge Haddon granted was the identical motion that we filed 24 days after the petition for removal. Thank you. Thank you. Rebuttal? I believe I used my entire ten minutes. That's all right. We'll give you a couple minutes. I don't think Mr. Trewiler has said anything different than what he said in the brief. Factually, it's, I believe, incorrect. He notes that BNSF's petition for removal did not have a certificate of conference. And, of course, one doesn't remove a case by petition any longer, and has not for many years. It is a notice of removal, which does not require a certificate of conference. We do understand, I mean, perfectly well, why Mr. Bilbrick and his counsel are, as I say, arguing that this is a technicality. And there's no way around the fact that it is a technicality in that sense. But, you know, Judge Haddon did not excuse, hold in abeyance, go back and allow to be reconsidered. I mean, he is a very – he is a stickler. He denied the motion. He allowed them to file another motion, which they filed, and he granted that one. And – And you don't deny the motion because you can't deny on a rule of form, as your opponent says? I don't know, Your Honor. I don't know. I mean, fortunately, we didn't face that question. I think the ordinary practice – I mean, we were surprised that Judge Haddon denied the motion, because many judges will hold it in abeyance, just say you have a procedural default. But on the other hand, as I said, and we pointed out the Muscovsky case as an example, there are many district judges who will remand a case without any explanation on the basis of a failure to comply with the many both local and Federal requirements for removal. And in the Muscovsky case, it was not putting an index on the State court documents that accompany the papers when you remove. And Judge Elfin there, a very fine Federal judge in New York, said, okay, so there's no question technicalities can and do play a large role here. But again, the issue is simply one of reviewability. All we're saying is that this makes the order reviewable. And if we're not right on the merits, then it's still going to be – still going to be remanded. And the technicalities exist because the courts and the Congress have apparently decided that that is the correct final decision to get the case in and out. And obviously, as Mr. Torello points out, this case is not a good example of that. We're still – we're still in the courts. But, you know, this is an issue that is of some importance to BNSF because of the Shamrock Rule. Kennedy. Well, how does Judge Haddon's finding that the railroad was a plaintiff, how does that cut across all this? Phillips. Well, of course, that is a – everyone agrees that is not a matter of subject matter jurisdiction. So if he – if he granted an untimely motion, then it – that is also reviewable. And we submit that's – that's plainly wrong. I mean, Judge Haddon cited one of this Court's decisions which says no more. And it's very, very brief. It just says a plaintiff may not remove. And, of course, we concede that point. What we argue is that we are, in fact, the defendant inside a long line of cases going back to the United States Supreme Court case Mason City, which precedes the Shamrock Oil and the other cases. I know Judge Cuda usually had a case involving the Shamrock Oil exception, but Mason City says it is the mainspring of the proceedings. And that's been applied over and over to who wants something from the other person. If, in this case, Mr. Bilbrook wants us to pay him money and do some other things, you know, we would like to see this proceeding go away. We didn't initiate it. We don't want it to be around, but it is. That makes us, under the Mason City rule, the defendant. And so while we don't dispute that a plaintiff may not remove, in this case, even though we had to file the petition in State court to keep our argument going, resisting the claim, we are the defendant. And, again, we cited a lot of cases and a lot more we didn't cite that apply to Mason City, but it is necessary to take to court an initial adjudication of a claim. So... Have you taken advantage of our mediation service? We have, Your Honor. We have. And they were very professional and excellent. These sorts of claims are, at least because this is an issue of some importance to BNSF beyond this particular case, it was difficult to unresolve. But we did. And, as I say, the service was excellent. All right. Thank you very much. And the matter will stand submitted.
judges: Pregerson, Ferguson, Ikuta